

# The Attorney General of Texas

December 21, 1978

**JOHN L. HILL**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Wilson E. Speir, Director.
Texas Department of Public Safety
5805 N. Lamar Blvd.
Austin, Texas 78773

Opinion No. H- 1299

Re: Whether certain materials constitute oil field equipment for purposes of article 911b, section 1(i), V.T.C.S.

Dear Mr. Speir:

You ask whether the term "oil field equipment," as it appears in the Motor Carrier Act, V.T.C.S. article 911b, includes caliche, sand, gravel, cement, reinforcing steel for bridges and culverts, lumber for forms, road beds and fencing, or other road building materials used to construct and maintain a road upon an oil and gas lease or a drilling pad located at a well site. Article 911b provides for the licensing of specialized motor carriers, defined in part as follows:

> (i) 'Specialized motor carrier' means any person owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting, over any public highway in this state, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof. . . .

> For the purpose of this Act, the term 'specialized equipment' includes, but is not limited to block and tackle, hoists, cranes, windlasses, gin poles, winches, special motor vehicles, and such other devices as are necessary for the safe and proper loading or unloading of property requiring specialized equipment for the transportation and handling thereof.

> For the purpose of this Act, the term 'property requiring specialized equipment' is limited to (1) oil field equipment. . . .

> For the purpose of this Act, the term 'oil field equipment' means and includes machinery, materials, and equipment incidental to or used in the construction, operation, and maintenance of facilities which are used for the discovery, production, and processing of natural gas and petroleum, and such machinery, materials, and equipment when used in the construction and maintenance of pipelines.

Sec. 1(i).

Thus, oil field equipment requires specialized equipment to transport and handle, see Attorney General Opinion O-6916 (1945), and includes machinery, materials, and equipment incidental to or used in the construction, operation, and maintenance and processing of oil and gas. This definition of oil field equipment covers a wide variety of items, so long as they are used in the ways stated by the statute. Attorney General Opinion S-104 (1953) determined that sand and hydrated lime constitute "oil field equipment" as defined by article 911b, section 1(i), if used to maintain oil refineries. The intended use of the road building materials you enumerate is a fact question which cannot be resolved in the opinion process.

You next ask whether transportation of the enumerated materials is regulated when a highway is traversed as set out in article 911b, section 1c, V.T.C.S., or when the commodities are transported between two or more cities, towns, or villages. Article 911b, section 1c states

> The terms 'Motor Carrier' and 'Specialized Motor Carrier,' as used in Section 1 of this Act, shall apply to and include all for hire transportation of oil field equipment, as defined in subdivision (i) of Section 1 of this Act, over the public highways of this State outside the corporate limits of cities or towns, irrespective of whether in the course of such transportation a highway between two (2) or more incorporated cities, towns or villages is traversed.

As a general matter, a motor carrier is not covered by the Act unless it traverses a highway between two or more incorporated towns in transporting property. V.T.C.S. art. 911b, § 1(g). Section 1c effectively subjects to regulation all for hire transportation of oil field equipment over public highways whether or not a highway between two municipalities is traversed.

You finally ask whether a carrier with Railroad Commission authority to transport road building materials could legally transport them to an oil field facility without also having authority to transport oil field equipment. The authority of a certificated carrier to transport property depends on the certificate itself and the intent of the commission in granting it. See State v. Bilbo, 392 S.W.2d 121 (Tex. 1965); Dye Trucking Company v. Miller, 397 S.W.2d 507 (Tex. Civ.

App.  —  Austin 1965, writ ref'd n.r.e.); Attorney General Opinion M-244 (1968).  The issuance of a specialized certificate covering certain items to a carrier does not withdraw the existing authority of a general commodity carrier to carry the same items.  See V.T.C.S. art. 911b, § 5a(b); cf. Alamo Express v. Union City Transfer, supra (specialized carriers granted authority to carry certain items following evidence that common carriers rendered inadequate service).

## S U M M A R Y

Whether the term "oil field equipment" as it appears in article 911b, section 1(i), V.T.C.S., includes road building materials used to build and maintain facilities for the discovery and production of oil and gas  is a fact question. Section 1c of article 911b requires the regulation of all for hire transportation of oil field equipment over public highways whether or not a highway between two municipalities is traversed.  Whether or not a carrier with authority to transport road building materials may transport them to an oil field facility depends on the terms of the certificate and the intent of the commission in granting it, but he does not necessarily need authority to transport oil field equipment in order to provide this service.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn